[No. 1533. Decided March 9, 1895.]

DAVID H. WEBSTER et al., Appellants, v. MARY E. THORNDYKE et al., Respondents.

REVIEW ON APPEAL — FINDINGS IN EQUITY CASES — SEPARATE PROPERTY OF WIFE — CONSTRUCTION OF WILL — POWER OF SALE.

Under the provisions of the statute of 1893, governing the review on appeal of equitable causes, the findings of the trial court, if supported by proof which reasonably establishes the facts found, will not be disturbed because there is testimony to t e contrary which, in the judgment of the appellate court, may be entitled to greater weight. (Overruled in Roberts v. Washington National Bank, post.

The presumption that property purchased by the wife in her own name, and with her own means, is her separate property, is not overcome by evidence that the husband put improvements on the lot by fencing and building thereon with his own means.

The fact that technical and apt words of conveyance are not used in framing a will is immaterial if the intent of the testator to pass the title to real estate appears from the language used, when construed as a whole.

The will of a testatrix was in substantially the following language: "As to my worldly estate, and all the property, real, personal or mixed, of which I shall die seized and possessed of, or to which I shall be entitled at the time of my decease, I devise and bequeath and dispose thereof in the manner following, to wit: As my will is that all my just debts and funeral expenses shall, by my executors hereinafter named, be paid out of my estate as soon after my decease as shall by them be found convenient. Item, I give, devise and be-. queath to my husband the use, improvements and income of my dwelling house and lots [description] until such time as is deemed by my executors, and all interested in the sale of said lots, to sell said lands, together with my lots [description], and out of the moneys arising from such sale, the sum of four thousand dollars to be safely invested in securities, and the interest thereon to be paid as follows, to wit: The sum of twelve dollars to be paid annually to the pastor of the Baptist church of Seattle, and the remainder to my husband during his natural life. I give, devise and bequeath to my sister, Louisa, the sum of two hundred dollars, and the residue of money arising from said sale to be equally divided between and among [certain named beneficiaries].  .  .  .   After the death of my husband the residue of the four thousand dollars to be divided equally between and among my grandchildren which shall be alive at his decease." *Held,* That the will must be construed as passing the title to the realty to the executor, and that he was given full power to sell the property and apply the proceeds as directed in the will.

### *Appeal from Superior Court, King County.*

*Blaine & DeVries* and *Battle & Shipley,* for appellants:

In the interpretation of a will the true inquiry is not what the testator meant to express, but what the words used express. *Couch v. Eastham,* 3 S. E. 23; *Montgomery v. Montgomery,* 11 S. W. 596.

Where the conditional power of sale of a testator's lands is vested by the will not alone in the executor, but all interested in the sale of the lots, there is a failure to devise the lands and they descend to the heirs at law. Coke, Littleton, § 336, a; *Bergen v. Bennett,* 1 Caines Cas. 1; *Schauber v. Jackson,* 2 Wend. 23; *Moores v. Moores,* 41 N. J. Law, 441; *Hawley v. Smith,* 45 Ind.

183; *Mills v. Harris*, 10 S. E. 704; *Miller's Appeal*, 60 Pa. St. 407.

Since a sale of the lots was only to take place upon the consent of all interested parties, and John Webster being one of those parties and having died without consenting, a consent by the survivors would be of no avail. *Barber v. Cary*, 11 N. Y. 401; *Anewalt's Appeal*, 6 Wright (Pa.), 416; *Glover v. Stillson*, 56 Conn. 316; *Tarver v. Haines*, 55 Ala. 503. Where the power of sale is to be exercised upon the consent of parties interested in the proceeds of it the courts cannot compel those parties to give their consent. *Nagle's Appeal*, 13 Pa. St. 263; *Weber v. Lester*, 10 N. Y. Supp. 258; *King v. King*, 13 R. I. 501; *Shelton v. Homer*, 5 Metc. 466; *In re Machemer's Estate*, 21 Atl. 441; *Lathrop v. Lathrop*, 18 N. Y. Supp. 651; *Keller v. Harper*, 64 Md. 74; *Washington v. Abraham*, 6 Grat. 66; *Taylor's Settlement*, 9 Hare (Eng. Ch.), 600.

*Carr & Preston, W. R. Bell* and *Mitchell Gilliam* for respondents:

The cardinal rule of testamentary construction is that the intent of the testator must prevail, if that intent may be carried into effect without violating some settled principle of public policy. The testator's intention is to be collected from the whole will taken together, and not from detached portions alone; and all the parts and provisions of the will are to be construed in relation to each other so as, if possible, to form one consistent whole and operate together. Schouler, Wills, §§ 466-468; *Smith v. Bell*, 6 Pet. 75; *Riker v. Cromwell*, 20 N. E. 605; *McCamant v. Nuckolls*, 12 S. E. 162; *Cresap v. Cresap*, 12 S. E. 532; *Colton v. Colton*, 127 U. S. 300; *Clark v. Boorman*, 18 Wall. 502; *Bobb's Succession*, 5 South. 757.

A proper construction of the will must recognize the intent of the testatrix to have been to devise the lots to the executor in trust, for a trust power given to the executor to sell land vests the title in him as fully as if the land had been specifically devised to him in trust. *Shippen v. Clapp*, 36 Pa. St. 89; *Shippen's Heirs v. Clapp*, 29 Pa. St. 265; *Crane v. Bolles*, 24 Atl. 239. Where the legal title is necessary to the performance by the executor of the trusts imposed upon him by the will, he will be considered as possessed of the legal title. *Cleveland v. Hallett*, 6 Cush. 407; *Morton v. Barrett*, 22 Me. 263 (39 Am. Dec. 575); *Williams v. Society,* 1 Ohio St. 498; 2 Pomeroy, Eq. Jur. § 1011.

A point is made by the appellants that the power of sale is vested, not in the executor, but in "all interested." A reading of the will shows that the donee of the power is not specifically named. The determination of the proper time of sale is with the "executor and all interested in the sale." The law is, that where a will contains a power to sell lands for the purpose of distribution, of paying debts and legacies, without naming the donee of the power, it will vest in the executor by implication. The power is vested in the executor to sell the land by necessary implication if he has a duty to discharge with the proceeds, although he is not expressly named in the will as the person who is to sell. *Davoue v. Fanning*, 2 Johns. Ch. 254; *Taylor v. Benham*, 5 How. 268; *Schroeder v. Wilcox*, 57 N. W. 1033; *Rankin v. Rankin*, 36 Ill. 300 (87 Am. Dec. 275); *Peter v. Beverly,* 10 Pet. 563; *Bogert v. Hertell*, 4 Hill, 495.

Where a power is to be exercised by and with the advice, consent and approval of the beneficiaries, it may be exercised after the death of one or more of the beneficiaries by and with the advice, consent and

approval of the surviving beneficiaries. *Hackett v. Milnor*, 26 Atl. 738; *Haggerty v. Lanterman*, 30 N. J. Eq. 39; *Sohier v. Williams*, 1 Curt. 479; *Leeds v. Wakefield*, 10 Gray, 514; *Faulkner v. Davis*, 98 Am. Dec. 713; *Kimball v. Chappel*, 18 N. Y. Supp. 30.

The opinion of the court was delivered by

Hoyt, C. J.— John Webster and Phœbe Ann Webster were husband and wife. They resided for a long time prior to their death in the county of King. During a portion of the time they lived upon a farm in the White river valley. While living there the lots, the title to which is in controversy, were purchased and deeded to the said Phœbe Ann Webster. At the time of her death she made a will in which she sought to dispose of said lots as her separate property, and whether or not she had a right so to do is one of the principal questions presented on this appeal.

It was claimed on the part of the respondents that the money with which these lots were purchased was that of Phœbe Ann Webster, and that the deed was taken in her name on account of the purchase price having been paid by her and the purchase made in her interest. On the other hand, it was contended that the money belonged to said Phœbe Ann Webster and her husband, John Webster, and that the title to the lots was taken in her name simply as a matter of convenience and for the purpose of placing them beyond the reach of creditors who might thereafter become such on account of business operations in which the husband might engage.

It appears from the proofs that the particular money which was used in the purchase of the lots had been paid to Mrs. Webster for the support of certain minor children which had been placed in her care, and for

washings done for outside parties. There was proof tending to establish the contention that by an understanding between Mrs. Webster and her husband this money was to be her own; that he had made her a present of any interest which he might have had therein. There was also proof tending to show that such was not the fact; that, while she claimed the money as here own, her husband had made objections to its going to her as her property.

The proofs in the record enter with much detail into this question, and if we were called upon to decide the fact as to whether this money belonged to the wife or to the husband and wife together, uninfluenced by the finding of the trial court, it would be necessary to enter into an examination of such proofs at great length. But the law does not authorize us to so decide the question. Under the provisions of the statute of 1893 (Laws, p. 130, § 21), the findings of the trial court in an equity cause stand upon substantially the same footing as those of a court or jury in a law case. Hence, it will only be necessary for us to determine whether or not the trial court has made a finding upon this question, and if it has, to further determine whether or not there is evidence to support it.

In the determination of the latter fact it is not proper that we should enter into an investigation of the weight of the testimony. If the finding is supported by proof which reasonably establishes the facts found, it will not be disturbed because there is testimony to the contrary, even although we should be of the opinion that such testimony was entitled to greater weight than that which tended to support the finding. An examination of the findings of fact contained in the record will show that the trial court expressly found that this money was the separate property of the wife; and

since, as we have seen, there was testimony tending to establish that fact as well as to establish the contrary one, it follows that such finding must stand, and in the light of it the rights of the parties must be here adjudicated.

The court found, as a result of the circumstances surrounding the ownership of the money and of the purchase of the lots, that upon their purchase they became the separate property of the wife, and that they were such at the time of her death. It is contended by the appellants that this finding is not supported by the proofs. The only facts tending to contradict the presumption which would arise from the purchase of the lots with the money of the wife grew out of the improvement of said lots by fencing and building thereon by the husband, in part at least with his own means; and the facts shown in that regard were not of such a nature as to overturn the presumption arising from the purchase and deeding of the lots. It follows that the lots must be assumed to have been the property of the wife and subject to disposition by her last will.

Hence we are called upon to decide the other material question presented by the record. Said Phœbe Ann Webster died on the 1st day of February, 1884. She left a last will, the substantial part of which was in the following language:

"And as to my worldly estate and all the property, real and personal or mixed, of which I shall die seized and possessed of, or to which I shall be entitled at the time of my decease, I devise and bequeath and dispose thereof in the manner following, to wit: As my will is that all my just debts and funeral expenses shall, by my executors hereinafter named, be paid out of my estate as soon after my decease as shall by them be found convenient. Item, I give, devise and bequeath

to my husband, John Webster, the use, improvements
and income of my dwelling house and lots numbered
two and three in Block ten (10), of C. D. Boren's plat
of the city of Seattle, Territory of Washington, until
such time as is deemed by my executors and all inter-
ested in the sale of said lots to sell said lands, together
with my lots numbered thirteen (13) and fourteen (14),
in Block numbered twelve (12), in McAleer's Second
Addition to the city of Seattle, and out of the moneys
arising from such sale, the sum of four thousand dol-
lars, to be safely invested in securities, and the interest
thereon, to be paid as follows, to wit:   The sum of
twelve dollars to be paid annually to the pastor of the
Baptist church of Seattle, and the remainder to my
husband, John Webster, during his natural life.  I give,
devise and bequeath to my sister, Louisa Bogart, the
sum of two hundred dollars, and the residue of money
arising from said sale to be equally divided between
and among my son, David H. Webster, and my daugh-
ter, Mary Elizabeth Thorndyke, Frank E. Johns and
my adopted son, Eddie M. Webster.  I give, devise
and bequeath, after the death of my husband, John
Webster, the residue of the four thousand dollars, to
be divided equally between and among my grandchil-
dren which shall be alive at his decease, and lastly I
do nominate and appoint Thomas M. Alvord, of White
River, to be the executor of this, my last will and tes-
tament."

It is contended by the appellants that the real estate
therein described was not disposed of by said will; that
the only thing that passed thereby was the right to the
possession by the husband, John Webster, during his
lifetime; that said will did not affect the title to the
property, but that it descended to the heirs in the
same manner that it would have done had Mrs. Webster
died intestate.   The claim of the respondents is that
the title was, by the terms of the will, vested in the
executor; that thereunder he was given full power to
sell the property and apply the proceeds, as directed

in the will; that the only check placed upon him in making such sale was that he should consult those interested in the property as to the time when it should be made.

The will was not drawn by an expert, and for that reason the most technical and appropriate language was not used in framing the different provisions; but in our opinion the intention of the testator can be gathered from the language used, and, if it can, it is the duty of the court to see that such intention is given effect. The appellants call attention to the fact that there are no technical words which show an intention to pass the title in the real estate to the executor or to any other person. This is probably true, but the fact that such words are not made use of is immaterial, if the intent to pass the title is apparent. This intention may not clearly appear from any one clause or provision, but we think it does appear from the language used when construed as a whole.

To otherwise construe the language used will make impossible of execution many of the provisions of the will. If of two constructions of an instrument one will give effect to all the objects which it is evident were sought to be accomplished by its execution, and another will not, the one which will should be adopted, if the language used can be so interpreted as to allow such construction. This rule, applied to the language of the will above set out, will compel us to hold that the title passed to the executor. To hold otherwise would practically nullify the object of the testator in making the will. The executor is required to do things which could only be done by the exercise by him of rights in the property flowing from full title; hence it should not be held that it was only the use of it that was devised.

In our opinion the trial court correctly construed the will and made such a decree as, under the circumstances disclosed by the record, did full justice to all of the parties to the action. Hence such decree will be in all things affirmed.

Scott, Dunbar, Anders and Gordon, JJ., concur.