[No. 19764.   Department One.   April 7, 1926.]

## In the Matter of the Estate of HENRY SHARPNACK, Deceased.

### SADIE SHARPNACK NARTZ, *Appellant,* v. DEXTER HORTON NATIONAL BANK, *as Executor, Respondent.*[1]

[1] WILLS (72, 73)—CONSTRUCTION OF TESTAMENTARY TRUSTS—TERMINATION—INTENTION OF TESTATOR—ASCERTAINMENT FROM WORDS OF WILL. A will creating a trust estate by which, in two subdivisions, two sums are set apart, the income to be paid to the beneficiaries for life, and providing, in another subdivision, that all the rest, residue and remainder of the trust estate shall be administered until a certain event, when "the trust herein created be wound up and determined," is not repugnant or contradictory; since the intent (which controls under Rem. Comp. Stat. § 1415) is clear that the trust to be wound up at that time relates only to the rest, residue and remainder of the trust, and not to the two other bequests.

[2]. SAME (51)—PERSONS LIABLE—CONTEST—COUNSEL FEES—POWER TO AWARD. Rem. Comp. Stat. § 1389, authorizing costs in the discretion of the court against the contestant of a will, if it is sustained, costs of $50 for attorneys against a contestant who brings a second contest after an adverse decision, will be sustained on appeal.

Appeal from a judgment of the superior court for King county, Frater, J., entered October 2, 1925, upon findings in favor of the defendants, in an action to construe a will.   Affirmed.

*John J. Kennett* and *Winter S. Martin,* for appellant.

*Poe, Falknor, Falknor & Emory,* for respondent.

FULLERTON, J.—Henry Sharpnack died testate at Seattle, King county, Washington, on November 5, 1916, leaving an estate situated in King county, consisting of real and personal property.

[1]Reported in 244 Pac. 715.

The will of the testator contained the following provisions:

"Second. I give and bequeath to my sister Sarah Jane Wendell, wife of John H. Wendell, of Holly, Michigan, the sum of One Thousand (1000) Dollars, should she survive me and not otherwise.

"Third. I give and bequeath to Sophie Germain of Seattle, Washington, should she survive me and not otherwise, the sum of Five Hundred (500) Dollars."

"     .     .     .     .     .     .     .

"Fifth. All the rest, residue and remainder of the property and estate of which I may die seized and possessed, or to which I may be entitled at the time of my death, I give, devise and bequeath to the Dexter Horton Trust and Savings Bank, a corporation of Seattle, Washington, its successor or successors, in trust nevertheless upon the following terms and conditions:

"(a) I hereby authorize my said trustee, its successor or successors, to lease, let, sell, mortgage, invest or re-invest any or all of my said estate when and at such times and upon such terms and conditions as to it may seem best, and for such purposes make, execute and deliver any instruments in writing which may be necessary or proper, and otherwise to do generally in regard to the control and management of my said estate any and everything which I could do if then alive.

"(b) I direct my said trustee to set apart from said trust estate the sum of One Thousand (1000) Dollars and keep the same invested in such securities as it thinks advisable, and from time to time and at convenient intervals pay the net income therefrom to my said sister Sarah Jane Wendell so long as she may live. Upon the death of my said sister said principal sum of One Thousand (1000) Dollars shall revert to and become a part of my said trust estate and managed accordingly.

"(c) I direct my said trustee to set apart from said trust estate the sum of Two Thousand (2000) Dollars and to keep the same invested in such securities as it thinks advisable, and from time to time and at con-

venient intervals pay the net income therefrom to said Sophie Germain so long as she may live. In the event the said Sophie Germain shall die leaving a child or children her surviving, then and in that event the income from said principal sum of Two Thousand (2000) Dollars shall be divided equally among said children until such time as the youngest of them attains the age of twenty-one (21) years, at which time said principal sum shall be distributed equally among such children. In the event that she die without a child or children her surviving, then and in that event said principal sum of Two Thousand (2000) Dollars shall revert to and become a part of my trust estate and managed accordingly.

"(d)  All the rest, residue and remainder of said trust estate shall be invested and kept invested by my said trustee and one-half of the net income thereof paid at convenient intervals to Sadie Sharpnack, daughter of my divorced wife, until such time as she attains the age of thirty-five (35) years. As and when the said Sadie Sharpnack attains the age of thirty-five (35) years without a child or children then living, then and in that event I direct that the trust herein created be wound up and determined, and that the principal and accumulated income of my said trust estate be paid over and distributed to her as her sole and separate property absolutely and forever. In the event, however, that the said Sadie Sharpnack has a child or children living at the time she attains the age of thirty-five (35) years, then and in that event one-half of the principal and accumulated income of said trust estate shall be distributed to her, and the remaining half shall be held by my said trustee and invested and kept invested, and the net income therefrom used and devoted as my said trustee shall think best to the education, support and maintenance of such child or children. As and when such child attains the age of twenty-one (21) years, or in the event there be more than one child, then when the youngest of her said children attains the age of twenty-one (21) years, I direct that said trust be wound up and determined and the half of my said estate set apart for such child or

children be paid over and distributed to them share and share alike. In the event that said Sadie Sharpnack should die before attaining the age of thirty-five (35) years leaving a child or children her surviving, all of said trust estate shall be held by my said trustee for the benefit of such child or children, and the net income therefrom devoted to their support, maintenance and education until such time as the youngest of her surviving children attains the age of twenty-one (21) years, at which time I direct that said trust be wound up and terminated and the property thereof distributed equally among her children who attain the age of twenty-one (21) years share and share alike.''

The will was admitted to probate, on the petition of the trustee named therein, on November 9, 1916, and the trustee confirmed as executor thereof. At the end of the time within which claims against the estate could be presented, the executor filed a petition asking that the estate be distributed to the several devisees thereof according to the terms of the will. In its petitions, it reported that all the expenses of administration and claims against the estate had been paid, and that it had paid the specific bequest to Sarah Jane Wendell.

As to the bequest to Sophie Germain, it reported that the bequest had not been paid; that it had made diligent effort to discover the whereabouts of the legatee and her children, or either of them, and as to this bequest it asked that it be awarded to it, to hold until the discovery of the legatees. The daughter, Sarah Sharpnack, named in the will as the residuary legatee, had theretofore filed with the court a petition by which she sought to have the trust estate awarded as a whole to herself, free from the terms of the trust, contending that the will with respect to this part of the estate was inoperative and void, because the conditions thereof were contradictory and repugnant. The

petitions were heard together by the court, and an order was made therein purporting to direct a distribution of the estate in accordance with the prayer of the trustee's petition. The daughter thereupon moved to vacate the order, and a hearing was had upon the motion. The trial court, subsequent to the conclusion of the hearing, filed a written opinion in which a modification of the order was directed; the principal modification being to permit the daughter at a future time to renew her application in the case "uncertainties or ambiguities in the will, or complications in the execution of the trust . . . arise."

On August 26, 1925, the daughter filed a supplemental petition, in which she again attacked the trust provisions of the will. She further alleged that she had reached the age of thirty-five years, and that she had theretofore married and was the mother of a son, four years of age. In the prayer of her petition, she asked that the trust provisions of the will be declared null and void, and that the trustee be directed to account for and turn over to her all the property belonging to the estate and held by it as trustee. In an alternative prayer, she asked the court to give no legal effect to subdivisions (b) and (c) of paragraph five of the will, and direct that one-half of the trust property be distributed to her, and that the other half be held by the trustee for the benefit of her son, James Willis Nartz. A hearing was had upon the petition, at the conclusion of which the court entered a decree sustaining the validity of the will, and awarded to the trustee an attorney's fee of $50, chargeable to the petitioner. From the decree the petitioner appeals.

In this court the appellant makes two contentions for reversal of the decree. The first is that the will is void because of inconsistent and repugnant pro-

visions, and the second, that it was error to allow an attorney's fee to the trustee.

The testator, it will be observed from the second and fourth paragraphs of the will, makes specific bequests to Sarah Jane Wendell and Sophie Germain, and then bequeaths and devises (paragraph fifth) all of the remainder of the property in trust. By subdivision (b) of the fifth paragraph, the trustee is directed to set apart from the trust estate the sum of $1,000, keep the sum invested and pay the net income therefrom to Sarah Jane Wendell as long as she may live; the principal sum to revert to the trust estate upon her death.

By subdivision (c) of the same paragraph, the trustee is directed to set apart from the trust estate the sum of $2,000, keep it invested, and pay the net income therefrom to Sophie Germain as long as she may live. If she dies without children, the principal sum at her death is to revert to the trust estate. If, however, she has children, the principal sum is to be divided among them. By subdivision (d) of the fifth paragraph, the trustee is directed to invest and keep invested "all the rest, residue, and remainder" of the trust estate, and at convenient intervals pay one-half of the net income therefrom to the daughter, Sadie Sharpnack, until she attains the age of thirty-five years. At this time it is directed "that the trust herein created shall be wound up and determined," and that "the principal and accumulated income of my said trust estate shall be paid over and distributed to her as her sole and separate property absolutely and forever." This latter provision is subject to the contingency that she is at that time without issue. If she has issue, then she is to receive one-half of the trust estate, and the remainder is to be held by the trustee for the benefit of her issue.

[1]   The particular contention of the appellant is that subdivision (d) of the will is inconsistent with and repugnant to subdivisions (b) and (c) because it may be that the sum set apart by subdivision (b) will not revert to the trust estate when she reaches the age of thirty-five, and the sum set apart by subdivision (c) may never revert at all, whereas it is provided by subdivision (d) that the trust shall at that time be "wound up and determined," and the whole thereof shall be set over to her, or be set over one-half to her and one-half to her issue, if issue she has, and that this cannot be done if the directions of subdivisions (b) and (c) are given effect.

But we are not persuaded that the contention has merit.   It is a cardinal rule in the construction of wills that effect shall be given to the true intent and meaning of the testator, when such intent can be gathered from the language of the will.   Rem. Comp. Stat., § 1415; *Newport v. Newport,* 5 Wash. 114, 31 Pac. 428; *McCullough v. Lauman,* 38 Wash. 227, 80 Pac. 441; *In re Peters' Estate,* 101 Wash. 572, 172 Pac. 870; *Shufeldt v. Shufeldt,* 130 Wash. 253, 227 Pac. 6.

In *Webster v. Thorndyke,* 11 Wash. 390, 39 Pac. 677, speaking concerning a will, we used this language:

"If of two constructions of an instrument one will give effect to all the objects which it is evident were sought to be accomplished by its execution, and another will not, the one which will should be adopted, if the language used can be so interpreted as to allow such construction."

Turning to the will here in question, it seems to us manifest that the testator intended that the specific sums set apart from the trust estate for the benefit of Sarah Jane Wendell, and Sophie Germain and her children, by subdivisions (b) and (c) of the will should be administered by the trustee as therein directed, and

that when he directed that the trust estate should be wound up and determined, as directed in paragraph (d), he meant that part of the trust estate mentioned in the subdivision; namely, all the "rest, residue, and remainder" of the trust estate, after the sums set apart to the other beneficiaries of the trust were taken therefrom. It may be that the words of the testator will bear the interpretation the appellant puts upon them, but they are also capable of the construction the trial court gave to them, and since the one construction will destroy the will while the other sustains it, under the rule of *Webster v. Thorndyke* the construction upholding the will must be adopted.

[2] Concerning the attorney fee allowed, the trial court made the folowing conclusions:

"9. It is further ordered, adjudged and decreed, and appears from the records and files in this cause that the said Sadie Sharpnack Nartz heretofore and on November 17th, 1917, filed a petition in which she sought substantially the same relief demanded in her supplemental petition, which said petition was heard and considered by the court, which adjudged that said will was free from uncertainties and ambiguities and that the trusts therein described were valid."

". . . . . . . .

"11. That the supplemental petition and contest of said will by the said Sadie Sharpnack Nartz is without any justification or foundation whatsoever, especially so in the light of the determination of the court upon her original petition and she should pay to The Dexter Horton National Bank of Seattle the sum of Fifty Dollars as its reasonable attorneys' fees, and judgment is hereby awarded against her for that amount."

The statute (Rem. Comp. Stat., § 1389), relating to costs which may be allowed in proceedings brought in contest of a will, provides:

"If the probate be revoked or the will annulled, assessment of costs shall be in the discretion of the court. If the will be sustained, the court may assess the costs against the contestant which costs may in the discretion of the court include a reasonable attorney's fee."

The statute leaves the assessment of an attorney's fee, in the case of a contest of a will, where the will is sustained, to the discretion of the trial court, and this court can reverse its order in that respect only for manifest abuse. We are unable to say that an abuse of discretion in this regard is shown in this instance, nor do we find that the amount allowed is unreasonable.

The decree of the trial court is affirmed.

TOLMAN, C. J., HOLCOMB, MAIN, and PARKER, JJ., concur.