[No. 21710. Department One. August 2, 1929.]

AGNES O'SHAUGHNESSY, *as Administratrix, Respondent,* v. LUCY BROOKS, *Appellant.*[1]

*J. M. Geraghty* and *Alex M. Winston,* for appellant.

HOLCOMB, J.—This appeal involves the construction of the last will and testament of Margaret Shaughnessy, otherwise O'Shaughnessy, deceased, and the rights of certain parties thereunder.

Our determination of the matter involved renders all portions of the will unimportant except those contained in paragraph 3, which reads:

"(3) I will, devise and bequeath to my said daughter Lucy the northwest quarter of section twenty-seven (27), township twenty-five (25) north, range

[1]Reported in 279 Pac. 591.

thirty-two (32), E. W. M., however upon the following trusts:

"The present whereabouts of my son George is unknown to me. I hope, however, he is alive, and, in that event, I wish to make provision for him. My said daughter Lucy is therefore to hold said last described land in trust for the period of seven years from the date of my death, and if within that time my son George is found, or appears to claim his right, my daughter is to convey the same to him, it being understood that until he does appear the rents, issues and profits of said land, less taxes and other proper charges, are to be retained by my said daughter as her own property.

"Should my son George not be found or appear within the said period of seven years, then I direct my said daughter as trustee to sell said land, and, out of the proceeds thereof, to pay to my said son Frank the sum of four thousand dollars ($4,000), the balance of such proceeds to go to my said daughter absolutely, or, in case of her death before such event, such balance to be paid to the heirs of her body."

There are other devises and legacies, both residuary and contingent, which we find it unnecessary now to consider.

Margaret Shaughnessy, or O'Shaughnessy, died on February 7, 1920, in Spokane county, Washington. Her will was duly probated in the superior court for Spokane county, and Lucy Brooks, who was nominated therein as executrix, received letters testamentary, qualified and proceeded with the execution of the will. She continued in the execution of her trust as executrix under the will until April 13, 1921, when a decree of distribution was duly entered in that court, which gave certain real estate to Frank Shaughnessy, another son and legatee of the testator, for life, and upon his death to Lucy Brooks; certain property (that which is now in controversy) to Lucy Brooks as trustee

for George Shaughnessy, Frank Shaughnessy and heirs subject to the provisions of paragraph 3 of the will; certain other property to Lucy Brooks absolutely; certain other property to Lucy Brooks in trust subject to an outstanding contract to Frank Shaughnessy, and to the provisions of paragraph 4 of the will; and all the rest of the property to Lucy Brooks.

The complaint of respondent set forth these facts, and further averred that Frank Shaughnessy died intestate on June 5, 1926, and respondent qualified as administratrix of his estate on February 25, 1927. The complaint then further alleges the terms of the will of Margaret Shaughnessy, deceased; that the decree of distribution was entered as hereinbefore stated; and that George Shaughnessy, to quote the language of the complaint:

". . . has not since the death of said Margaret Shaughnessy, deceased, appeared or otherwise claimed any interest under said trust or in the property therein described, although more than seven years has elapsed since the death of said deceased, Margaret Shaughnessy. That more than seven years has elapsed since said George O'Shaughnessy was last heard of and is now presumed in law to be dead."

The prayer of the complaint is that appellant be adjudged to hold the real estate in question as trustee, and not otherwise, and directed to sell the same and to pay to respondent the sum of $4,000.

To this complaint, appellant interposed a demurrer, which was overruled. She then filed an amended answer to the complaint, admitting the execution and probate of the will of Margaret Shaughnessy, deceased, the distribution of the estate under the terms of the will, denied the allegations in paragraph V of the complaint to the effect that George Shaughnessy had not, since the death of his mother, appeared or

otherwise claimed any interest in the property in question.

For a first, further and affirmative answer and defense, appellant alleged that George Shaughnessy, in fact, survived his mother; that on July 4, 1920, his mother having died on February 7, 1920, George wrote letters to appellant, to his brother, respondent's intestate, and to his mother, not knowing that she was dead; that George was then at Denver, Colorado; and that in 1925, George was, and is still, living in Oakland, California, and has communicated in writing with appellant within a month of the date verifying the affirmative defense, which date was December 7, 1927.

There was also a second affirmative defense alleged in the amended answer, not now necessary to notice.

To these two affirmative defenses, respondent interposed demurrers which were sustained by the trial court and a decree entered in favor of respondent in accordance with the prayer of her complaint.

On appeal, it is contended that the trial court erred in overruling her demurrer to respondent's complaint; in sustaining respondent's demurrer to the first affirmative defense in her amended answer; and in entering judgment in favor of respondent as prayed.

We have not the benefit of any brief or argument on behalf of respondent herein.

 Inasmuch as the complaint in the action alleged that George Shaughnessy had not, since the death of the testatrix, appeared or otherwise claimed any interest under the devise in trust in his behalf or in the property therein described, although more than seven years had elapsed since the death of the testatrix and more than seven years had elapsed since George Shaughnessy had been heard of, which averments were admitted by the demurrer thereto, we conclude that

the trial court did not err in overruling the demurrer to the complaint.

 It is quite different, however, with the demurrer to appellant's amended answer. By the demurrer, the allegations in the amended answer are to be deemed as confessed and true.

The first affirmative defense in the amended answer avers that, after the death of the testatrix, George O'Shaughnessy was living at Denver, Colorado, wrote letters to appellant, to Frank O'Shaughnessy and to their mother, not knowing that she was then dead. It was alleged that the letters were mailed at Denver, Colorado, on July 6, 1920, and received in due course of mail at Spokane. It was also alleged that in the month of October, 1925, George O'Shaughnessy was living in Oakland, California, and that he communicated in writing with appellant in November, 1927.

Our statutory and consistent judicial rule is that all courts and others concerned in the execution of last wills shall have due regard to the direction of the will and the true intent and meaning of the testator in all matters brought before them. Rem. Comp. Stat., § 1415. *In re Peters' Estate,* 101 Wash. 572, 172 Pac. 870; *In re Tiemens' Estate,* 152 Wash. 82, 277 Pac. 385.

In the *Peters' Estate* case, *supra,* we said:

"A court is bound to give that construction to a will which will effectuate the intention of the testator, if such intention can be gathered from the terms of the will itself, and the intention is to be gathered from everything contained within the four corners of the instrument."

And further,

" 'If of two constructions of an instrument one will give effect to all the objects which it is evident were sought to be accomplished by its execution, and another will not, the one which will should be adopted,

if the language used can be so interpreted as to allow such construction.' "

Paragraph 3 of the will created the trust in behalf of George, the son of the testatrix whose whereabouts were then unknown to testatrix, but, by all its language, she manifested her anxiety for his existence and her eager desire to make provision for him. She specified seven years from the date of her death as the period for the existence of the trust if George *should not be found,* or failed to appear to claim his right.

We cannot construe that paragraph of the will as the trial court apparently did, that George should *formally appear* or *visibly be found* in order that the estate devised and bequeathed to him should vest. The anxiety and carefulness of the mother in making her will to care for him, belies any such construction. According to the allegations of the affirmative answer, George survived his mother, the testatrix; and a will speaks as of the date of the testator's death. *Strand v. Stewart,* 51 Wash. 685, 99 Pac. 1027; *Pond v. Faust,* 90 Wash. 117, 155 Pac. 776, Ann. Cas. 1918A 736.

In *Freeman v. Freeman,* 141 N. C. 97, 53 S. E. 620, the court had for construction a paragraph of a will as follows:

"That the real and personal property, at the death of my wife, Elizabeth Freeman, shall be sold to the highest bidder (grave-yard excepted), and the proceeds equally divided between all my children that appears personally and claims their part, and this will shall disinherit all of said children that applies through an agent."

The court said:

"The meaning and import of this language, in its ordinary acceptation, is too plain to admit of doubt. Those of his children are to take who shall 'appear,' that is, who are living at the time fixed for the sale and distribution."

Formal appearance, while provided for in the will before us, was not essential, if, in fact, he be found to be alive, within seven years.

We agree emphatically with appellant that the expressed intention of the testatrix was that if, at any time within seven years after the death of the testatrix, it should be found or ascertained in any manner that George, in fact, survived his mother, he was entitled to his legacy.

We are bound by the admitted allegations of the affirmative defense. According to those allegations, George is found and therefore entitled to his legacy.

The judgment of the lower court is reversed.

TOLMAN, FULLERTON, BEALS, and MILLARD, JJ., concur.