[No. 27176-5-III.   Division Three.   August 20, 2009.]

KENNEWICK PUBLIC HOSPITAL DISTRICT, *Respondent*, v. ALICE E. HAWE ET AL., *Defendants*, DIOCESE OF OLYMPIA OF THE PROTESTANT EPISCOPAL CHURCH, *Appellant*.

662

*Donald H. Mullins* and *Allyssa J. Hale* (of *Badgley Mullins Law Group, PLLC*), for appellant.

*Ronald F. St. Hilaire* (of *Liebler Connor Berry & St. Hilaire, PS*), for respondent.

¶1 SWEENEY, J. — Albert M. Luth devised all of his real property in Benton County, Washington, to the Kennewick Public Hospital District (Hospital) in perpetuity so long as the property was not "transferred, incumbered or otherwise alienated from the purposes herein expressed and intended." Clerk's Papers (CP) at 198. The property was to go to Benton County (County) or the State of Washington if this direction was violated. That provision violates the rule against perpetuities and is therefore void. The question before us is whether the interest that remains is fee simple absolute (as the Hospital maintains) or whether, instead, it is fee simple determinable (in which case the Diocese of Olympia, Inc., would have an interest under the will of one of Mr. Luth's beneficiaries). We conclude that the resulting interest is fee simple absolute in the Hospital, and we affirm the summary judgment in favor of the Hospital.

## FACTS

¶2 Albert Luth executed a last will and testament in 1957. He devised his Benton County real property to the Hospital:

> I now give, devise and bequeath all of my right, title and interest in and to any real property owned by me at the time of my death within the County of Benton, State of Washington, to the Kennewick Public Hospital District, a municipal corporation, to keep and maintain the same, to collect the rents, issues and profits therefrom and to expend the income therefrom in the up-keep, maintenance and improvement of the hospital building and grounds as in the judgment of the duly elected commissioners of said hospital district seems best. I now direct that the real property shall not be sold but shall be retained as an investment. This devise is in perpetuity, and the property shall at no time be transferred, incumbered or otherwise alienated from the purposes herein expressed and intended, and if the same or any part thereof, shall at any time be conveyed, transferred or incumbered, by deed, mortgage or otherwise, then in such case I do devise all of the above mentioned real estate to the County of Benton, and in default thereof, to the State of Washington.

CP at 198.

¶3Mr. Luth devised one-quarter of the remainder of his estate to his niece, Laura Hurd; one-quarter to his nephew, Norval Havercroft; and one-half to his sister, Alice Hawe. Mr. Luth died in or before 1961. *See* CP at 64 ("the date of first publication of said notice [to creditors] was October 11, 1961"). In 1978, Ms. Hurd executed a will that left her estate to the Diocese. Ms. Hurd died in the 1980s. Br. of Appellant at 4.

¶4 The Hospital sued to quiet title to the property in 2006. The County and the State both waived any interest. The court entered default judgments to quiet title against the other defendants, except the Diocese. The Diocese and the Hospital filed cross motions for summary judgment in 2008. The court concluded that the Hospital held the property in fee simple absolute and granted summary judgment for the Hospital, quieting title. The Diocese appealed.

## DISCUSSION

¶5 The Diocese and the Hospital agree that the County's and the State's executory interests violate Washington's version of the rule against perpetuities and is therefore void. *See In re Estate of Lee*, 49 Wn.2d 254, 258, 299 P.2d 1066 (1956). The Diocese argues that Mr. Luth's will conveyed a fee simple determinable estate to the Hospital. And the effect of that was to transfer the property to Ms. Hurd's estate under the residuary clause in Mr. Luth's will if and when the Hospital violates the prohibitions in the will against transfer.

¶6 There are no disputed issues of fact here. The question presented is strictly a question of law—the legal effect of the failed executory interests of the County and the State. *State Bank of Wilbur v. Phillips*, 11 Wn.2d 483, 489, 119 P.2d 664 (1941). So our review is de novo. *ITT Rayonier, Inc. v. Dalman*, 67 Wn. App. 504, 507, 837 P.2d 647 (1992), *aff'd*, 122 Wn.2d 801, 863 P.2d 64 (1993). Mr. Luth's will

devised the subject property to the Hospital, followed by the statements:

> I now direct that the real property shall not be sold but shall be retained as an investment. This devise is in perpetuity, and the property shall at no time be transferred, incumbered or otherwise alienated from the purposes herein expressed and intended, and if the same or any part thereof, shall at any time be conveyed, transferred or incumbered, by deed, mortgage or otherwise, then in such case I do devise all of the above mentioned real estate to the County of Benton, and in default thereof, to the State of Washington.

CP at 198.

¶7 The rule against perpetuities requires that future estates vest or fail within "a life or lives in being at the time of the testator's death and twenty-one years thereafter." *Estate of Lee*, 49 Wn.2d at 258. Otherwise, the limitation is void. *Id.* So Mr. Luth's devise of a future estate to the County and the State fails under the rule against perpetuities because their interests may vest or fail into perpetuity.

¶8 The Diocese argues that once the rule against perpetuities invalidated the County's and the State's interests, Mr. Luth's devise became a fee simple determinable estate that reserves the right of reverter for Mr. Luth and his heirs. The Hospital characterizes the language in Mr. Luth's will as an attempt to devise an estate subject to executory limitation. So when the court struck the limitation, a fee simple absolute remained.

■■ ¶9 A conveyance of a fee simple estate may employ language of either "executory limitation" or "special limitation" to cause the created interest to automatically expire upon the occurrence of a stated event. RESTATEMENT OF PROPERTY §§ 25, 23 (1936). Language creating a fee simple subject to executory limitation must "express[ ] an intent of the conveyor that, on the occurrence of a stated event, an estate in fee simple contemporaneously conveyed or retained by the conveyor is to terminate in favor of an estate created in a person other than the conveyor." RESTATEMENT OF

PROPERTY § 46 cmt. j. By contrast, "[a] fee simple determinable, also called a determinable fee simple, is an estate that automatically terminates on the happening of a stated event and reverts to the grantor by operation of law." *Wash. State Grange v. Brandt*, 136 Wn. App. 138, 150, 148 P.3d 1069 (2006).

¶10 The effect of striking the County's and the State's interests in the subject property is removal of the condition of defeasibility. *See Richardson v. Danson*, 44 Wn.2d 760, 767, 270 P.2d 802 (1954); *Disney v. Wilson*, 190 Va. 445, 457, 57 S.E.2d 144 (1950) ("It is an established principle that where the condition upon which an estate can be divested can no longer arise, the estate, being freed of the condition, is rendered absolute."); 1 HERBERT THORNDIKE TIFFANY, THE LAW OF REAL PROPERTY § 199 (Basil Jones 3d ed. 1939). We then agree with the trial judge that the resulting interest is fee simple absolute.

¶11 The Diocese argues, nonetheless, that what remained was a fee simple determinable because extinguishing the interests of the County and the State did not, and should not, affect the testator's intent that the Hospital *not* transfer the property. *See Brandt*, 136 Wn. App. at 150. And, the Diocese continues, while estates subject to defeasance usually require specific language such as "for so long as," "while," "during," or "until," that language is not dispositive. RESTATEMENT OF PROPERTY § 44 cmt. *l*. It urges that the intent of the testator here (that the Hospital not transfer the property) will be effectuated by construing the provisions that remain as a fee simple determinable.

¶12 We consider first and foremost the testator's intent in construing Mr. Luth's will, and we look to the language of the will as the primary evidence of that intent. *Winner v. Carroll*, 169 Wash. 208, 213, 13 P.2d 450 (1932). There is no language here indicating an intent to create a reverter. First, the will's language indicates Mr. Luth intended to leave the land to the Hospital "in perpetuity." CP at 198. And if the Hospital "at any time . . . conveyed, transferred or incumbered" the property, the language clearly intends that the property go to

the County or, in the alternative, to the State. CP at 198. That is not possible. Second, specific words creating the potential for defeasance are important. *See Brandt*, 136 Wn. App. at 150. Unlike the conveyance addressed in *Brandt* there is no reverter language here. The *Brandt* conveyance used the words "reverts back." *Id.* To the contrary, Mr. Luth's will provides that the property escheat to the County or the State. The language here then creates a fee simple subject to executory limitation when it created a future interest in the County and the State, not a fee simple determinable. RE-STATEMENT OF PROPERTY § 46. And when the executory limitation was invalidated, the Hospital is left with fee simple absolute. *Richardson*, 44 Wn.2d at 767.

¶13 The Hospital argues that we should also refuse to enforce the reversion to Mr. Luth and his heirs because the devise is an unreasonable restraint on alienation. *See Alby v. Banc One Fin.*, 156 Wn.2d 367, 372, 128 P.3d 81 (2006) (noting that fee simple determinable estates are subject to the rule against restraints on alienation). The Diocese responds in part that the language of the will imposes only an indirect restraint on alienation. All future interests discourage alienability, but not all future interests are invalid. *See Martin v. City of Seattle*, 111 Wn.2d 727, 737, 765 P.2d 257 (1988) (Callow, J., dissenting). As the Diocese asserts, Washington "unhesitatingly" enforces a grantor's plain and unambiguously expressed intent to attach a defeasible condition to an estate. *Grove v. Payne*, 47 Wn.2d 461, 465, 288 P.2d 242 (1955). But nothing in the majority holding of *Martin* or the *Grove* decision suggests that a clearly expressed restraint, as in Mr. Luth's will, is not subject to the rule against unreasonable restraints on alienation.

¶14 In Washington, "[u]nreasonable restraints on alienation of real property are . . . invalid." *McCausland v. Bankers Life Ins. Co. of Neb.*, 110 Wn.2d 716, 722, 757 P.2d 941 (1988). To determine whether a restraint is reasonable, we balance "the utility of the purpose served by the re-

straint against the injurious consequences that are likely to flow from its enforcement." *Alby*, 156 Wn.2d at 373. We consider the restraint's scope, duration, and purpose and whether the restraint is supported by consideration. *Id.* If we determine that the restraint is reasonable, we next consider whether the parties' legitimate interests support enforcement. *McCausland*, 110 Wn.2d at 722. Legitimate purposes include "retaining land in families; preserving affordable housing; furthering . . . charitable purposes to which land is devoted; and facilitating land investment and creating investment opportunities." *Alby*, 156 Wn.2d at 373 n.4.

¶15 Here, Mr. Luth explicitly prohibited the Hospital from conveying, transferring, or encumbering the property. The grantors in *Alby* did not directly prevent the grantees from selling the property. *Id.* at 372. Here, the Hospital received the subject property as a gift. In *Alby* the grantors transferred the property at a substantially reduced price to keep the property in the family. *Id.* at 373. Most importantly, Mr. Luth intended for his restraint on alienation to continue in perpetuity. The limitation to maintain the family ownership of the *Alby* property was limited to the grantors' lifetimes. *Id.* And, notably, four justices dissented in *Alby* on the ground that they thought the restraint on alienation was unreasonable and should not have been enforced. *Id.* at 374 (Alexander, C.J., dissenting), 378 (Chambers, J., dissenting). The clause in Mr. Luth's will is an unreasonable restraint; it differed from the clause upheld as a reasonable restraint in *Alby* in several key aspects.

¶16 Whether by operation of the rule against perpetuities or the doctrine prohibiting unreasonable restraints on alienation, or both, the trial court correctly concluded that the Hospital holds the property in fee simple absolute.

¶17 The Hospital requests fees on appeal but cites no authority to support that request.

¶18 We affirm the summary judgment in favor of the Hospital and deny the Hospital's request for fees.

KULIK, A.C.J., and KORSMO, J., concur.

Review denied at 168 Wn.2d 1012 (2010).